UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.,
    Plaintiff,

No. 1:08-cv-945

-v-

HONORABLE PAUL L. MALONEY

TAMMY CHURCH, CHARLES DAVIS,
AND THE UNITED STATES OF AMERICA,
    Defendants.

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

This matter comes before the court on Defendant United States of America's motion (Dkt. No. 34) for summary judgment. Plaintiff Mortgage Electronic Registration Systems (MERS or Plaintiff) filed a response. (Dkt. No. 44.) Defendant United States (Defendant or United States) filed a reply. (Dkt. No. 45.) Having reviewed the motion, supporting briefs, exhibits and relevant legal authority, the previously scheduled oral argument is not necessary to resolve the contested legal issues. *See* W.D. MICH. L.CIV.R. 7.2(d).

BACKGROUND

Plaintiff MERS filed suit in the Antrim County Circuit Court in 2008 to determine interests in real property. The subject property is in fact, located on Torch Lake Drive, Milton Township, Antrim County, Michigan, on the southwestern end of Torch Lake. (*See* Def.'s Ex. 2.) Torch Lake is about 19 miles long, running north and south. The lake is located in Antrim County, although the southern end of the lake abuts Kalkaska County. (*Id.*) Rapid City is located in Kalkaska County.

Defendant Tammy Church (Defendant Church) borrowed money against the property. In March 2004, Defendant Church executed an adjustable rate note and mortgage with Argent Mortgage Company for $330,000.00, leveraging the subject property. (Def.'s Ex. 1.) On August

2, 2006, Defendant executed a mortgage with MERS for $402,500.00, again leveraging the subject property. (Compl. Ex. A.) The proceeds of the second mortgage were used to pay off the prior mortgage, as well as a judgment lien and delinquent taxes. (Compl. ¶ 9; Compl. Ex. B.) The mortgage was recorded in Kalkaska County on August 19, 2006, rather than Antrim County. (Compl. ¶ 10.)

Before MERS discovered it recorded the mortgage in the wrong county, Defendant United States properly recorded several tax liens against Defendant Church in Antrim County. Defendant United States recorded a Notice of Federal Tax Lien (NFTL) against Defendant Church on August 28, 2006 with the Antrim County Register of Deeds for $143,930.81. (Comp. Ex. I.) Defendant United States recorded four additional NFTLs against Defendant Church in April and May 2007 for $4,875.54, $285,902.42, $9,943.43 and $20,720.96. (Compl. Exs. E-H.) MERS eventually discovered its recording error and recorded its mortgage on the subject property on October 18, 2007. (Compl. Ex. A.)

## LEGAL STANDARD

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in a light most favorable to the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 574. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

ANALYSIS

A. PRIORITY OF THE LIENS

The court must first determine which party, MERS or the United States, has the priority interest in the Torch Lake property. The question of priority concerns both federal and state law. When determining the interest in property or rights to property held, courts look to state law and where a federal tax lien has attached to a state-created property interest, courts look to federal law to determine the priority of competing liens on the property or rights to property. *Aquilino v. United States*, 363 U.S. 509, 512-513 (1960); *Mount Carmel Mercy Hosp. v. IRS*, No. 09-1330, 920 F.3d 933 at * 1 (6th Cir. Dec. 12, 1990) (unpublished table opinion) ("state law is used to determine whether there is an interest in property; however, federal law is used to determine priority of interest where federal tax liens are involved."). Michigan has adopted a race-notice recording act such that the party who first properly records its interest in real property will have priority over subsequently recorded interests in the property, unless the party has notice of a prior unrecorded interest. MCL 565.29; *First of America Bank-West Michigan v. Alt*, 848 F.Supp.1343, 1347 (W.D. Mich. 1993) (McKeague, J.); *Graves v. American Acceptance Mortgage Corp.*, 467 Mich 308, 312, 652 N.W.2d 221, 223 (2002), vacated on other grounds, 467 Mich. 1231, 658 N.W.2d 482 (2003); *Richards v.*

*Tibaldi*, 272 Mich. App. 522, 539, 726 N.W.2d 770, 780 (2006). Deeds and other interests in property are properly recorded in the office of the county Register of Deeds for the county where the property is located. *See First of America Bank-West Michigan*, 848 F.Supp. at 1347; *Glenn v. First American Title Ins. Co.*, No. 285669, 2009 WL 1830745 at * 2 (Mich Ct. App. June 25, 2009) (per curiam) (citing MCL § 565.25 and MCL § 565.29). Judge McKeague described how the Internal Revenue Code impacts Michigan's recording act.

> The Internal Revenue Code alters the scheme of priorities under Michigan law. Under 26 U.S.C. § 6321, a lien on an individual's property arises when the individual is liable to pay a tax, but neglects or refuses to pay the tax after notice of the liability is given. However, "[t]he lien imposed by section 6321 shall not be valid against any . . . holder of a security interest . . . until notice thereof which meets the requirements of [26 U.S.C. § 6323(f)] has been filed." 26 U.S.C. § 6323(a). Section 6323(f) requires that notice of a lien on real property be filed according to the laws of the state where the property is located. Accordingly, the tax lien has priority if it was recorded *first* with the register of deeds in the county where the property is situated.

*First America Bank-West Michigan*, 848 F.Supp. at 1347 (alterations and emphasis in original).

Based on the order in which the interests were filed in Antrim County, the lien filed by the United States has priority over the mortgage filed by MERS. There are no disputes of material fact bearing on this issue. Defendant United States recorded its lien with the Antrim County Register of Deeds before MERS recorded its mortgage with the Antrim County Register of Deeds. Although the MERS mortgage was executed in August 2006, the mortgage was recorded in the wrong county. The five liens filed by Defendant United States in Antrim County between August 2006 and May 2007 thus have priority over MERS' mortgage, which was not filed in Antrim County until October 2007.

   B. NOTICE

Plaintiff, in its response brief, asserts Defendant United States had notice of the MERS mortgage. Defendant United States argues, under the Internal Revenue Code, notice of a prior unrecorded mortgage is irrelevant for determining priority. Defendant United States also asserts it did not have notice of the MERS mortgage because neither IRS Form W-9 nor Form 1098 gives notice of a new mortgage. (Def.'s Ex. 4 - Krolik Affidavit ¶¶ 8-17.) Defendant United States contends its revenue officers operate like everyone else and obtain notice of mortgages by performing searches at the appropriate Register of Deeds. (*Id.* ¶ 7.)

In this case, the priority of interests in property are not determined by state law, they are determined by federal law. *Cardinal v. United States*, 26 F.3d 48, 49 (6th Cir. 1994) (citing *Aquilino*, 363 U.S. at 513-514). *See also United States v. Equitable Life Assurance Soc'y of the United States*, 384 U.S. 323, 330 (1966) ("the relative priority of a United States lien for unpaid taxes is a federal question."). Under state law, interests in real property are perfected by recording them with the Register of Deeds in the county where the property is situated. Both Plaintiff and Defendant United States have done that. Under state law, Plaintiff's mortgage would have priority over Defendant's lien *if* Defendant United States had notice of Plaintiff's mortgage when the tax lien was filed. Unlike the state statute, the Internal Revenue Code does not include any provision for notice when determining priority of interests. *See* 26 U.S.C. § 6323; *First America Bank-West Michigan*, 848 F.Supp. at 1350. This court concurs with Judge McKeague's conclusion, "[a]ccordingly, the Court finds that notice of a prior unrecorded interest is irrelevant for determining lien priority under the Internal Revenue Code." *Id.*

Independent of whether notice alters the priority of liens under the federal statute, there exists a separate and distinct reason to conclude the federal tax lien has priority over the MERS

5

mortgage. Plaintiff has not established Defendant United States had notice of the mortgage before the first tax lien was filed. Plaintiff asserts Defendant United States had notice of its mortgage because Defendant Church signed a W-9 form on August 2, 2006 when she executed the MERS mortgage. (Compl. Ex. J.) Plaintiff also relies on Form 1098, which was submitted to the IRS on March 12, 2007. (Pl.'s Resp. Ex. 3.) Neither document supports Plaintiff's claim that Defendant United States had notice of the mortgage prior to when the tax lien was filed. The 1098 Form was submitted to the IRS *after* Defendant United States filed its first NFTL. Where several federal tax liens are filed, "the priority of each lien relates back to the date of the first notice." *United States v. Bank of Celina*, 721 F.2d 163, 166 (6th Cir. 1983) (citing 26 U.S.C. § 6321 and *Peterson v. United States*, 511 F.Supp. 250-256-257 (D. Utah 1981)). Plaintiff has not alleged nor established when the W-9 Form was submitted to the IRS. The W-9 Form submitted to the court provides no information from which one could infer that it was filled out because of a mortgage. A W-9 Form is simply a request for a taxpayer identification number. Therefore, neither document is sufficient to create a genuine issue of material fact on the issue of notice.

  C. EQUITABLE SUBROGATION

The final issue for resolution is whether Plaintiff is entitled to equitable subrogation. The Internal Revenue Code provides, if under local law, one person's interest in real property is subrogated to the rights of another with respect to that property, "such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324." 26 U.S.C. § 6323(i)(2). "Therefore, a court must examine state law in determining whether equitable subrogation applies." *Van Dyk Mortgage Corp. v. United States*, 503 F.Supp.2d 876, 879 (W.D. Mich. 2007) (Quist, J.). *See also Bednarowski and Michaels Dev. LLC v. Wallace*, 293 F.Supp. 2d 728, 730 (E.D. Mich.

6

2003) (Battani, J.) (quoting 26 U.S.C. § 6323(i)(2) and concluding "[t]he court must therefore look to Michigan law to determine whether Plaintiff's interests are subrogated").

In Michigan, equitable subrogation has been defined as "'a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other.'" *Ameriquest Mortgage Co. v. Alton*, 273 Mich. App. 84, 94, 731 N.W.2d 99, 105 (2007) (quoting *Hartford Accident & Indem. Co. v. Used Car Factory, Inc.*, 461 Mich. 210, 215, 600 N.W.2d 630, 633 (1999) (quoting *Commercial Union Ins. Co. v. Med. Protective Co.*, 426 Mich. 109, 117, 393 N.W.2d 479, 482 (1986) (opinion of Williams, C.J.))). However, in order to be a subrogee, the person who pays the debt may not be a "mere volunteer," but must have made the payment "in order to fulfill a legal or equitable duty owed to the subrogor." *Id.* at 106 (citing *Beaty v. Hertzberg & Golden, P.C.*, 456 Mich. 247, 254-255, 258, 571 N.W.2d 716, 720 (1997)). The Michigan Supreme Court and the Michigan Court of Appeals have issued several opinions relevant to the intersection of subrogation, mortgages and volunteers, which have been adequately summarized elsewhere. *See Van Dyk*, 503 F.Supp.2d at 880-884; *Ameriquest Mortgage*, 731 N.W.2d at 105-108; *Washington Mut. Bank. F.A. v. Shoreline Corp.*, 267 Mich. App. 111, 114-120, 703 N.W.2d 486, 488-492 (2005).

In Michigan, a party with no preexisting interests in real property, who loans money to another to pay off an existing mortgage, is not entitled to the application of equitable subrogation. *Ameriquest Mortgage*, 731 N.W.2d at 107. In *Ameriquest Mortgage*, the Michigan Court of Appeals convened a special panel to resolve a purported conflict between two earlier opinions, *Washington Mut. Bank*, 703 N.W.2d 486 and *Ameriquest Mortgage Co. v. Alton*, 271 Mich. App. 424, 726 N.W.2d 801 (2006), vacated in part, 271 Mich. App. 801 (2006) (*Ameriquest I*). The panel

7

concluded *Washington Mutual* was correctly decided and upheld its prior ruling in *Ameriquest I*. In *Washington Mutual*, the plaintiff made a loan secured by a mortgage and the loan was made to pay off a prior first mortgage on the property. At the time the loan was made, the plaintiff was unaware of two other mortgages encumbering the property. The two other mortgages were recorded before the plaintiff's mortgage and were made after the prior first mortgage that the plaintiff's loan was used to satisfy and discharge. When the owners defaulted on the other two mortgages, the plaintiff sued seeking equitable subrogation in order to have priority over the other two mortgages. Reviewing a host of opinions by the Michigan Supreme Court, the *Washington Mutual* court concluded "the doctrine of equitable subrogation does not allow a new mortgageee to take the priority of the older mortgagee merely because the proceeds of the new mortgage were used to pay off the indebtedness secured by the old mortgage." 703 N.W.2d at 491.

The same outcome occurred in *Ameriquest I*. There, a property owner secured three loans in exchange for three mortgages. The mortgage was recorded on March 11, 2002. The second mortgage, secured with knowledge of the first mortgage, was recorded on March 21, 2003. The third loan was made to the plaintiff without knowledge of the first two and the mortgage on the third loan was recorded on May 1, 2003. The funds from the third loan were used to pay off the first mortgage. In a suit filed by the plaintiff after the owner defaulted on the two remaining mortgages, the plaintiff asserted, under the doctrine of equitable subrogation, it was entitled to assume the priority position of the first mortgage because the funds from the third loan were used to pay off the first mortgage. The court felt obligated to follow the holding in *Washington Mutual*, but expressed disagreement with the outcome. *Ameriquest I*, 726 N.W.2d at 425. The panel declared a conflict with *Washington Mutual* and convened a special panel under Michigan Court Rule 7.215(J)(2).

After reviewing Michigan law on equitable subrogation and volunteers, the special panel affirmed the holding in *Washington Mutual* and *Ameriquest I*. *Ameriquest Mortgage*, 731 N.W.2d at 108.

Plaintiff is not entitled to the application of equitable subrogation. Plaintiff is a mere volunteer. Prior to loaning Defendant Church money to pay off her existing mortgage as well as a judgment lien and delinquent taxes, Plaintiff had no interest in the property. Plaintiff was not a surety or a guarantor of the first mortgage. Plaintiff voluntarily loaned Defendant Church money and was not compelled in any way to pay off the first mortgage. *Contra Van Dyk Mortgage*, 503 F.Supp.2d at 886 ("Van Dyk had a preexisting interest in the Property to protect. It was not a mere 'intermeddler' or a stranger to the land or a party with no interest to protect. It held a mortgage with first priority, and when it discharged that mortgage and recorded a new mortgage, it was attempting to continue the same interest that it had in the property.").

## CONCLUSION

Defendant United States is entitled to summary judgment. There are no genuine issues of material fact. The federal tax lien has priority over Plaintiff MERS' mortgage. Plaintiff MERS, as a mere volunteer, is not entitled to application of the doctrine of equitable subrogation.

## ORDER

Defendant United States' motion (Dkt. No. 34) for summary judgment is **GRANTED. IT IS SO ORDERED.**

Date:   October 26, 2009                                                /s/ Paul L. Maloney   
                                                                        Paul L. Maloney  
                                                                        Chief United States District Judge